IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Pinnacle Risk Engineering, LLC, and Nadine Binns<br><br>Plaintiff,<br><br>vs.<br><br>Global Consulting USA LLC d/b/a Paragon Risk Engineering,<br><br>Defendants. | C/A No. 2:24-cv-07235-DCN<br><br>**PLAINTIFFS' COMPLAINT AGAINST DEFENDANTS**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiffs Pinnacle Risk Engineering, LLC, and Nadine Binns (hereinafter "Plaintiffs", "Pinnacle", and "Binns", by and through their undersigned attorney, file this Complaint against the above-named Defendants and state:

1. Plaintiff Pinnacle Risk Engineering, LLC, is a corporation existing under the laws of the State of South Carolina, and is headquartered in Charleston County, South Carolina.

2. Plaintiff Nadine Binns is a resident of the State of New Jersey, and is a member of Pinnacle Risk Engineering, LLC, and, thus, conducts business in the State of South Carolina, by and through Pinnacle Risk Engineering, LLC. Binns is bringing this action by and through her status as a member and shareholder of the South Carolina Limited Liability Corporation, Pinnacle.

3. That Defendant is a corporation existing under the laws of the State of New Jersey, and has availed itself of the laws and Courts of the State of South Carolina, by,

1

most recently, filing suit against Pinnacle Risk Engineering, LLC, Duane Yost, and Tiffany Hrycyna, in the South Carolina District Court, Division of Charleston, Case No. 2:24-cv-04919-DCN, filed on September 9, 2024 ("Underlying Action").

4. There is diversity between Plaintiffs and Defendants, and the damages in this case exceed $75,000.00. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332. There is also federal question jurisdiction under 28 U.S.C. § 1331 pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* There is also Supplemental Jurisdiction, pursuant to 28 U.S. Code § 1367, due to the existing Underlying Action case.

5. Venue is proper in this district under 28 U.S.C. § 1391 because Plaintiff Pinnacle resides in the Charleston County, South Carolina and a substantial part of the events or omissions giving rise to the claims occurred in Charleston County, South Carolina, and since Defendant has already submitted itself to the jurisdiction of this Federal District Court, in Charleston South Carolina, to litigate identical and overlapping issues, arising out of the same transaction and occurrences, which is currently pending in Case No. 2:24-cv-04919-DCN, filed on September 9, 2024, such that it would be inequitable, judicially inefficient, and potentially produce inconsistent results if these matters are not litigated together in the same Court.

6. Upon the filing of this action, and service of the same upon Defendant, Plaintiffs intend to move This Court, pursuant to FRCP 42(a) to Consolidate this Action, with the currently pending action of Case No. 2:24-cv-04919-DCN, filed on September 9, 2024, such as both actions involve common questions of fact, given the risk of inconsistent adjudications, available judicial resources, the burden on parties (duplicative discovery, depositions, and motions), and the length of time required to litigate the same.

7.  This action arises in the form of a Federal Declaratory Judgment Action, pursuant to 28 U.S.C. § 2201. There is an actual and justiciable controversy between the Parties, that is currently being litigated in this Court, and which Defendant plans to bring against these Plaintiffs, such that all such claims and allegations need to be litigated in the same Court, in the same action.

## FACTS AND ALLEGATIONS

8.  Pinnacle Risk Engineering, LLC, ("Pinnacle") provides risk engineering and consulting to clients. The members of Pinnacle Risk Engineering, LLC, are Binns, Duane Yost ("Yost"), and Tiffany Hrycyna ("Hrycyna"), all of whom formerly worked together at Defendant Paragon, at all relevant times underlying this Complaint, before resigning to work for the limited liability company they formed, Pinnacle.

9.  Defendant Paragon has filed Case No. 2:24-cv-04919-DCN (hereinafter, referred to as the "Underlying Action"), alleging Yost and Hrycyna, as members of Pinnacle, unfairly solicited Defendant's clients and competed against Paragon, in part, by misappropriating Defendant's alleged trade secrets. The main drive of the Underlying Action, was that Yost, Hrycyna, and Pinnacle misappropriated Defendant's trade secrets, which has been denied.

10. Specifically, and among other allegations, Defendant has alleged or intends on alleging these parties:

   a. Breached their Employment Contract with Defendant;

   b. Misappropriated Defendant's alleged trade secrets, both under South Carolina and Federal statutes, including 18 U.S.C. § 1836;

   c. Tortiously interfered with the contracts of Defendants in order to benefit Pinnacle;

3

    d. Converted Defendant's alleged trade secrets to Pinnacle's benefit;

    e. Civilly conspired together to injure Defendant, and to Pinnacle's benefit;

    f. Engaged in unfair trade practices with Paragon, pursuant to South Carolina Unfair Trade Practices Act;

    g. Breached the Duty of Loyalty; and

    h. Were unjust enriched by the misappropriation of Paragon's alleged trade secrets by Defendants.

11. Yost and Hrycyna (as Defendants in the Underlying Action) have filed counterclaims against Defendant (Plaintiff in the Underlying Action), alleging Abuse of Process, Malicious Prosecution, Defamation, Negligent Supervision & Training, & Intentional Infliction of Emotional Distress. Pinnacle has not yet alleged these claims. See Underlying Action Amended Answer and Counterclaim, Case No.: *2:24-cv-04919-DCN, ECF #24.*

12. In Yost and Hrycyna's counterclaims, they allege that Defendant (Plaintiff in Underlying Action) has manufactured the trade secret allegations as a proxy, trojan horse, legal claim, in order to engineer a pretextual cause of action that will have the effect of preventing Pinnacle and its members from competing and soliciting, where no such restrictive covenant exists, and to conversely create as much legal expense as possible, for Pinnacle and its members, in order to financially force them out of business, or to settle on Paragon's terms.

13. Specifically, Paragon's President McMullen, prior to filing suit, made veiled litigation threats against Pinnacle and its members, based not on any specific facts or allegations, but focused almost entirely on the legal expense to Pinnacle and its members, based on baseless litigation, which he called "legal nonsense".

4

14. In that regard, Paragon could have elected to file one lawsuit against Pinnacle and all three of its members, Yost, Hrycyna, and Binns, based on the same transaction, occurrence, operative facts, claims and causes of action.

15. Upon information and belief, Paragon elected not to sue Binns in the Underlying South Carolina action, so that they could bring the same causes of action and allegations against Binns and Pinnacle in a different Court, which would to create duplicative and superfluous litigation, thus, involving more lawyers, more courts, and more legal expenses, in order to drown Pinnacle and its members in expensive multi-district litigation regarding frivolous allegations of misappropriation of non-existent trade secrets.

16. Upon information and belief, Defendant Paragon intends to file nearly identical factual averments, claims and causes of action, all arising out of the same operative facts, transactions and occurrences, against Nadine Binns and Pinnacle in some as yet, unnamed jurisdiction. Thus, there is a real, justiciable claim between Plaintiffs Binns and Pinnacle and Defendant Paragon.

17. Binns has never signed any restrictive covenants, non-competes, non-solicitation agreements, confidentiality agreements, non-disclosure agreements, non-circumvention agreements with Paragon.

18. Paragon's job, generally, is to prepare risk engineering reports for its clients. Paragon does not have any confidential, proprietary, and/or trade secret rights to those reports, the information contained within those reports, and/or any documents prepared for the clients in tandem or in association with those reports. This data, these documents,

5

and these reports belong to the clients of Paragon. This is well accepted in the risk engineering industry.

19. The only confidentiality involved in the documents, Paragon claims to be trade secrets, concern Paragon's obligations to its clients to mark certain reports as confidential, so that Paragon's clients can keep track of which vendors should have access to the risk engineering reports and/or analysis.

20. Paragon understands that any reports, data, documents, or pricing provided by Paragon to its clients, may be, and likely will be, provided to any entity the client of Paragon wishes to produce said information to, including other vendors of Paragon's client, and including competitors of Paragon.

21. At all relevant times, Paragon was aware that the risk engineering reports and analysis prepared for clients are not any identifiable, protectable, confidential trade secrets proprietary to Paragon. The format of these reports was in a format specifically requested by Paragon's clients. The observable findings were what was seen by the engineers while performing site visits. The analyses are reached by using industry standards that are publicly available.

22. None of these documents or reports are treated as confidential trade secrets of Paragon. These documents are not stored in special repositories of Paragon where it can track and/or restrict how these documents are accessed. Paragon's employees commonly keep these documents on their own Paragon-issued laptop computers, which Paragon's employees access as they wish, and use old reports as the basis to prepare new reports. The only passwords Counterclaimants ever had to use in connection with the actual preparation of engineering reports, is the password they came

up with to access the lock screen of their own Paragon-issued laptop computer. The lock screen passwords on these computers are standard-issued password screens for all laptop computers and are not special to Plaintiff. Paragon has always known this.

23. Plaintiffs performed absolutely no professional services for any clients until after Binns, Yost, and Hrycyna terminated their employment with Paragon on June 3, 2024, and Binns did in fact use the days between May 31, 2024 to June 4, 2024, to finish work related tasks, including the outstanding Paragon reports that Paragon had asked Plaintiffs to finish for Paragon. Paragon took absolutely no steps during this time to limit Binns' access to documents on Binns' Paragon-issued laptop computers, despite McMullen vaguely making reference on a May 31, 2024 recorded call that Paragon had an interest in its intellectual property.

24. After Binns terminated her employment with Paragon on June 3, 2024, Paragon took absolutely no action whatsoever to identify the specific alleged trade secrets to Binns, and never asked for the return of the specific documents. In fact, the first time any documents were ever identified to Binns as being trade secrets of Paragon was when Binns, as member of Pinnacle, reviewed the filed Verified Complaint in the Underlying Action after it was filed on September 9, 2024.

25. Paragon used the intervening months between June 3, 2024, and the filing of the Verified Complaint, to attempt to interfere with Pinnacle and Binns' new business and to disparage Pinnacle and Binns' name to their clients. No real effort was made to identify, demand for return of, or otherwise protect these alleged trade secrets. The only efforts were made to use the specter of these allegations to torment and threaten Plaintiffs.

7

26. Plaintiffs are forced to file this action in order to equitably force Paragon to litigate all of its alleged claims against all Parties, in one action, in the Court that Paragon chose to initiate suit in, and to not to forum shop in order to create the most financially burdensome litigation for Pinnacle and its members. The only feasible way to force Paragon to litigate its claims in one Court, without risking that Paragon would file suit against Binns and Pinnacle in another jurisdiction and choose to fight removal, and other costly jurisdictional motion practices, is by the Plaintiffs filing this action first and asking the court to consolidate.[1]

**FOR A FIRST CAUSE OF ACTION**
**Declaratory Judgment, Pursuant to 28 U.S.C. § 2201**
**by Binns and Pinnacle against Paragon**

27. The Plaintiff reiterates and reallege the foregoing allegations and defenses, as if re-stated herein.

28. The District Court has jurisdiction for a Declaratory Judgment Action as there is an actual controversy of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

29. The District Court possesses jurisdiction by way of federal questions involving 18 U.S.C. § 1836, diversity jurisdiction, and/or supplemental jurisdiction, as set forth in the jurisdictional recitation above. Due to the existing Underlying Action in which these same issues are being raised, and in which Defendant Paragon voluntarily submitted to this Court's jurisdiction, the United States District Court, District of South

---

[1] In fact, upon filing and service of this suit, Plaintiffs will immediately request that Paragon attorneys, in the Underlying Action, to consent to the Consolidation of this claim with the Underlying Action, or to otherwise move to amend its claims to include Binns, individually, and Binns on behalf of Pinnacle, in this action.

Carolina, Charleston Division, has proper jurisdiction and the matter should be assigned to Hon. David Norton.

30. Plaintiffs are entitled to a Declaratory Judgement from the Court, in their favor, on the following grounds:

   a. That Defendant Paragon Global is not entitled to injunctive relief against Binns, regarding any of its claims, but specifically pertaining to any claims based upon the alleged misappropriation of a trade secret;

   b. That Plaintiff Binns did not execute any Employment Agreements, Employee Handbooks, and/or restrictive covenants with Global Paragon, such as to sustain a Breach of Contract claim;

   c. That Binns has not engaged in any conduct that constitutes a breach of the duty of loyalty, and/or that neither Binns nor Pinnacle has earned profits during Binns' employment with Paragon such as to justify any claim for lost profits or disgorgement of profits, and/or any claim for unjust enrichment;

   d. That neither Pinnacle, nor Binns, as a member of Pinnacle, tortiously interfered with any contract of Global Paragon;

   e. That Defendant Global Paragon's documents, Bates-stamped 1-774, in the Underlying Action, do not constitute protectable Trade Secrets of Global Paragon, such as to support claims against Binns and Pinnacle for:
      i. Violation of SC Trade Secrets Act, S.C. Code 39-8-10, et. seq.;
      ii. Conversion;
      iii. Civil Conspiracy
      iv. The Defense of Trade Secrets Act, 18 U.S.C. § 1836; and
      v. South Carolina Unfair Trade Practices Act;

31. This controversy relies on Defendant Global Paragon's mistaken allegations that it has a proper protectable interest in certain documents it is alleging are trade secrets, whether those documents were treated or protected as trade secrets, whether Binns, on behalf of herself or Pinnacle, downloaded onto a personal device, converted, or otherwise misappropriated these alleged trade secrets, and therefore, whether the claims that are based upon a misappropriation of trade secrets must fail.

9

32.     Plaintiffs also believe that Defendant Paragon may claim other un-named or unspecified torts, all based on these same operative facts, as is referenced in the Underlying Action, and that Defendants are not entitled to judgment on those claims, or otherwise have not been proximately caused damages based on those claims.

33.     Plaintiffs seek a declaration from the Court that they have not violated any duties or obligations to Defendant Paragon, and/or that Paragon has not suffered damages as a result of the same, or otherwise to declare what duties Plaintiffs owed to this Defendant, what evidence exists to support any alleged breach of these duties, and/or whether evidence exists to support proximately caused damages based on these breaches.

34.     If successful, Plaintiff is entitled to reasonable attorneys fees and costs in association with having to file this Declaratory Action claim.

**FOR A SECOND CAUSE OF ACTION**
**(Pinnacle's Claim for Abuse of Process**
**Against Defendant Paragon)**

35.     The Plaintiff reiterates and reallege the foregoing allegations and defenses, as if re-stated herein.

36.     Paragon filed suit against Pinnacle on September 9, 2024 in the Underlying Action. The suit is primarily based on the false allegation that it had a protectable interest in alleged trade secrets, which Paragon identified as its Bates Nos. 1-774, and that Pinnacle had misappropriated those trade secrets directly from Paragon's devices and/or cloud environment onto Pinnacle devices or devices that Pinnacle had access to.

37.     To achieve its improper purposes, Global Paragon abused the ordinary judicial processes.

38. Paragon, as Plaintiff in the Underlying Action, has alleged baseless allegations in its Verified Complaint, without any good-faith basis, based on only the fact that Pinnacle had accessed documents on their Paragon-issued laptops, for purposes of completing work projects that Paragon had asked Yost, Hrycyna, and Binns to complete, between May 31, 2024, - June 4, 2024, as alleged in the Verified Complaint, when knowing:

   a. That those documents do not constitute trade secrets and/or were not protected as such;

   b. That neither Yost, Hrycyna, Binns, nor Pinnacle have entered restrictive covenants or agreements identifying and/or limiting the dissemination of trade secrets;

   c. That neither Hrycyna, Binns, Pinnacle nor Yost had removed any alleged trade secret documents from Paragon's devices or network cloud environment onto any non-Paragon devices;

   d. That any alleged trade secret documents had never left the Paragon computer network, filed pleadings, which were sworn by McMullen, falsely alleging that Hrycyna, Binns, Yost and Pinnacle were thieves and had misappropriated the trade secrets;

   e. That Paragon had actual knowledge that the documents identified in its Verified Complaint, do not constitute trade secrets, and that Plaintiff concocted a narrative that Hrycyna, Binns, Yost, and Pinnacle had misappropriated trade secrets, in order to force Pinnacle to enter restrictive covenants, to retaliate against Pinnacle.

39. Paragon, as Plaintiff in the Underlying Action, alleged mischaracterized evidence that it knew or should have known to be false in a Verified Complaint.

40. Paragon used the financial power of Sigma 7 and its corporate attorneys to fund the continued pursuit of falsified claims to make this action as financially and emotionally draining as possible in the hope that Pinnacle would, at some point, capitulate

due to the expense of the litigation and close the Pinnacle business, relent its relationship with their Clients, and/or agree to enter restrictive covenants it has no obligation to enter.

41. The Underlying Action was never about protecting trade secrets. Paragon's pursuit of this lawsuit, without any evidence that trade secrets had ever left the Paragon computer network cannot be logically explained without reference to Paragon's real objective which was to force Defendants and Counterclaimants to enter into restrictive covenants they were not obligated to enter into.

42. The fact that, on May 31, 2024, McMullen threatened Pinnacle with veiled, vague threats of litigation and references to intellectual property; while making no effort to actually identify stolen trade secrets, seek the return of, or protect, alleged trade secrets; while trying to leverage Pinnacle to enter into restrictive covenants; along with the fact that the only documents Paragon alleges Counterclaimants to have taken, occurred after May 31, 2024, all while Paragon allowed Yost, Hrycyna, and Binns to keep their laptops and authorized them to finish reports for Paragon; all tell the story of a pretextual effort to frame Yost, Hrycyna, Binns, and Pinnacle for a trade secret theft allegation, which, in fact, never occurred.

43. Paragon was an active participant in the scheme and directed the abuse of process for ulterior purposes and using improper means and, in that way, perverted the legitimate use of the judicial system.

44. As a direct and proximate result of the abuse of process by Paragon, Pinnacle has incurred, and continues to incur, actual and consequential damages, including, but not limited to attorney's fees and costs, reputational damage, and any and all other legally recognizable damages allowed at law. Because the actions of Paragon

were willful, wonton, reckless, and malicious, Pinnacle is entitled to an award of punitive damages.

**FOR A THIRD CAUSE OF ACTION**
**(Pinnacle's Claim for Negligent Supervision, Training, and Retention Against Paragon)**

45. The Plaintiff reiterates and reallege the foregoing allegations and defenses, as if re-stated herein.

46. Paragon has a common law duty to supervise and train their employees, including McMullen, with regard to tortious conduct, to have policies and procedures to avoid such conduct, and not to negligently retain employees who violate such policies and procedures.

47. Paragon owes a common law duty to create and implement policies, procedures, and guidelines such as to prevent company employees from utilizing company resources, company emails, company reports, and/or legal resources to mischaracterize the existence of trade secrets, abuse the Court process and the rights of Plaintiff by engaging in abuse of process and the malicious prosecution of claims against Counterclaimants, and/or to prohibit said employees from using said misinformation to slander and/or to defame Counterclaimants.

48. Paragon failed to take commercially reasonable steps to train or prevent employees, executives, and/or agents acting on their behalf from engaging in a misuse and abuse of the legal process by their respective employees.

49. Paragon failed to develop sufficient policies, procedures, and guidelines such as to prevent employees, executives, and/or agents, acting on their behalf from

engaging in a misuse of the legal process by way of the afore-mentioned malicious prosecution of groundless claims by their respective employees.

50. Paragon has breached that duty to Plaintiffs, as set forth in detail above, by acting in a negligent, reckless, willful, wanton, and/or grossly negligent manner, which has proximately caused the actual and compensatory damages alleged by Pinnacle in the prior paragraphs, and which entitles Pinnacle to award of actual, consequential, and punitive damages. Because the actions of Paragon were willful, wonton, reckless, and malicious, Pinnacle is entitled to an award of punitive damages.

**WHEREFORE**, Plaintiffs pray that the Court:

1. That the Court and/or the trier of fact, award Pinnacle actual, compensatory, and/or punitive damages, and/or such other and further relief as this Court deems just and proper for its above causes of action;

2. The amount of any and all reasonable attorney fees and costs contained herein;

3. Declare the parties remaining obligations to one another, if any, to include but is not limited to:

    a. That Paragon does not have protectable trade secrets, and/or that Binns and Pinnacle did not convert or misappropriate the same onto any non-Paragon devices, and/or that any claims of Paragon based on trade secrets must fail or are barred;

    b. That Binns enter into any Employment or Handbook Agreement or any other restrictive covenant agreements;

    c. Paragon is not entitled to injunctive relief against Plaintiffs;

    d. Plaintiffs did not tortiously interfere with Paragon's contracts; and

    e. That Plaintiffs did not earn profit at the time of any alleged breach of the duty of loyalty;

4. **<u>A Trial by Jury is Demanded</u>** on any and all applicable claims.

        Respectfully submitted,

        BREWER LAW FIRM, LLC

        */s/ Barrett R. Brewer*
        _____
        Barrett R. Brewer, Esq.
        Fed. Bar No.: 8081
        Amanda F. Davis, Esq.
        Fed. Bar No.: 13524
        Post Office Box 1847
        510 Mill Street #2B (29464)
        Mt. Pleasant, SC 29465-1847
        o: (843) 779-7454
        f: (843) 779-7456
        barrett@brewerlawfirmsc.com
        amanda@brewerlawfirmsc.com
        Counsel for Defendants

December 12, 2024
Charleston, South Carolina